## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| MANUEL ADONIS HERNANDEZ PACHECO, | Case No.: 6:24-cv-02194 |
| Plaintiff, | |
| vs. | **JURY TRIAL DEMANDED** |
| ONE SOURCE TECHNOLOGY, LLC d/b/a ASURINT, | |
| Defendant. | |

## COMPLAINT

Manuel Adonis Hernandez Pacheco ("Plaintiff" or "Mr. Pacheco") by and through his counsel brings the following Complaint against One Source Technology, LLC d/b/a Asurint ("Defendant" or "Asurint") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's prospective employer, which falsely portrayed Plaintiff as an incarcerated and convicted felon, misdemeanant, and vehicular thief.

## INTRODUCTION

1.      This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.     Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis.  It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.     Defendant falsely reported to Plaintiff's prospective employer that Plaintiff is incarcerated and was convicted of felony vehicular hijacking, misdemeanor criminal trespass, and misdemeanor driving with a revoked license. Defendant's reporting is grossly inaccurate and untrue.

4.     Plaintiff has never been charged with or convicted of a crime in his life.

5.     Plaintiff's prospective employer sent Plaintiff an adverse action notice after receiving an employment background check report from Defendant in connection with Plaintiff's job application, which included the inaccurate misdemeanor and felony convictions that do not belong to Plaintiff. Plaintiff's prospective employer stated in the adverse action notice that it is considering withdrawing its job offer as a result of, in whole or in part, information received from Defendant in the subject report.

6.     Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available public court records from Cook County, Illinois regarding the felony and misdemeanor convictions prior to publishing Plaintiff's report to his prospective employer.

*Hernandez Pacheco v. One Source Technology, LLC d/b/a Asurint*
COMPLAINT

7.      Had Defendant performed even a cursory review of the public court records, it would have discovered that the criminal records belong to a different consumer who is wholly distinguishable from Plaintiff by their middle name (or lack thereof), last name (different surname or no compound surname), physical attributes, driver's license number, and who even resides in a different part of the country from Plaintiff.

8.      Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9.      Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10.      Defendant's inaccurate report cost Plaintiff a good paying job and job security.

11.      As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the

inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12.    As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

13.    Manuel Adonis Hernandez Pacheco ("Plaintiff" or "Mr. Pacheco") is a natural person residing in Kissimmee, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14.    Defendant One Source Technology, LLC d/b/a Asurint ("Defendant" or "Asurint") is a Delaware limited liability company doing business throughout the United States, including the State of Florida and in this District, and has a principal place of business located at 1111 Superior Ave, Suite 2200, Cleveland, Ohio 44114. Defendant can be served, and its Registered Agent is located, at c/o Corporate Service Company 1201 Hays Street, Tallahassee, Florida 32301.

15.    Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote.

These reports are provided in connection with a business transaction initiated by the employer.

16.    Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19.    Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they

applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20.    While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21.    Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22.    Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

### THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23.    Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

24.    The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25.    In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

26.    The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27.    Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28.    Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29.    Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data.  As a result of the increasing availability of this data, there has been a boom in the background check industry.

30.    As summarized in a recent report by the Consumer Financial Protection

Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

31.    The criminal background check industry takes in revenues in excess of three billion dollars, annually.

32.    Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data.  The reports are created and disseminated with little to no manual, in-person review, and the court records are rarely directly reviewed in creating criminal background checks.

33.    Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources.  The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

34.    Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf  ("CFPB Report").

*Hernandez Pacheco v. One Source Technology, LLC d/b/a Asurint*
COMPLAINT

35.    Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

36.    Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

37.    Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

38.    Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting misdemeanor and felony convictions that belong to an unrelated consumer who has a different middle name (or lack thereof), physical attributes, driver's license number, and who even resides in a different part of the country from Plaintiff.

39.    As a provider of background check reports, Defendant should be aware of the FCRA requirements and is a member of the Professional Background Screening Association ("PBSA").  PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

*Hernandez Pacheco v. One Source Technology, LLC d/b/a Asurint*
COMPLAINT

## FACTS

**Plaintiff Applies for a Job with Marten Transport, Ltd. ("Marten")**

40.    On or about November 8, 2024, Plaintiff applied for full-time employment as a truck driver with Marten. The truck driver position with Marten paid approximately $1,260 per week and included a comprehensive benefits package.

41.    On or about November 14, 2024, Plaintiff successfully completed an interview and passed a drug test.

42.    Upon applying to Marten, the recruiter extended a job offer to Plaintiff for the position to which he applied.  The job offer was conditioned upon Plaintiff passing a background check ("consumer report").

43.    Marten told Plaintiff that the prospective start date would be November 18, 2024. Plaintiff was excited because Marten was offering a higher pay rate than what he was receiving at his job at the time.

44.    Driven by the idea of getting a higher-paid job and equipped with the knowledge that he has no criminal records that would preclude him from the truck driver position with Marten, Plaintiff, in reliance on the job offer from the recruiter, quit from where he was working at the time.

//

*Hernandez Pacheco v. One Source Technology, LLC d/b/a Asurint*
COMPLAINT

**Defendant Published an Inaccurate Background Check Report to Marten**

45.     Marten contracts with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

46.     On or about November 8, 2024, Marten ordered a criminal background check on Plaintiff from Defendant.

47.     On or about November 12, 2024, in accordance with its standard procedures, Defendant completed its consumer report about Plaintiff and sold the same to Marten.

48.     Within that consumer report, Defendant published inaccurate information about Plaintiff.

49.     Specifically, Defendant's consumer report about Plaintiff included a felony vehicular hijacking conviction, a felony receive/poss/sell stolen vehicle, a misdemeanor criminal trespass conviction, and misdemeanor driving with a revoked license conviction from Cook County, Illinois, which appeared in the consumer report as follows:



**COUNTY CRIMINAL REPORT**

ILLINOIS - Cook                                                                                              Offense(s): 2

| MANUEL ADONIS HERNANDEZ PACHECO | | | | DOB: XX/XX/XXXX |

**CASE #24119127301 - CIRCUIT COURT OF COOK COUNTY - COOK**

**CASE SUMMARY**

| Case # | File Date | Court Type | Case Disposition | Disposition Date |
|---|---|---|---|---|
| 24119127301 | 01/06/2024 | | n/a | n/a |
| Offense(s) | Offense Date | Level | Offense Disposition | Disposition Date |
| DRIVING ON REVOKED LICENSE | n/a | MISDEMEANOR | GUILTY | 03/27/2024 |
| CRIM TRES TO VEH/PHY CONTROL | n/a | MISDEMEANOR | GUILTY | 03/27/2024 |

**CASE DETAILS**

**OFFENSE - DRIVING ON REVOKED LICENSE (MISDEMEANOR)**

Sentence/Fine Information

JAIL TIME: 0 yrs, 0 mos, 60 day(s)

Process Information

Offense: DRIVING ON REVOKED LICENSE - MISDEMEANOR Disposition: GUILTY

**OFFENSE - CRIM TRES TO VEH/PHY CONTROL (MISDEMEANOR)**

Sentence/Fine Information

JAIL TIME: 0 yrs, 0 mos, 60 day(s)

Process Information

Offense: CRIM TRES TO VEH/PHY CONTROL - MISDEMEANOR Disposition: GUILTY



**COUNTY CRIMINAL REPORT**

ILLINOIS - Cook                                                                                              Offense(s): 1

| MANUEL ADONIS HERNANDEZ PACHECO | | | | DOB: XX/XX/XXXX |

**CASE #17CR0823101 - CIRCUIT COURT OF COOK COUNTY - COOK**

**CASE SUMMARY**

| Case # | File Date | Court Type | Case Disposition | Disposition Date |
|---|---|---|---|---|
| 17CR0823101 | 06/05/2017 | | n/a | n/a |
| Offense(s) | Offense Date | Level | Offense Disposition | Disposition Date |
| VEHICULAR HIJACKING | n/a | FELONY | GUILTY | 11/17/2017 |

**CASE DETAILS**

**OFFENSE - VEHICULAR HIJACKING (FELONY)**

Sentence/Fine Information

COURT SUPERVISION: 8 yr(s), 0 mos, 0 days

Process Information

Offense: VEHICULAR HIJACKING - FELONY Disposition: GUILTY



50.    The criminal convictions reported by Defendant about Plaintiff to Marten **do not** belong to Plaintiff.

51.    Plaintiff has never been charged with or convicted of a crime in his life.

52.    A cursory review of the widely available public court records confirms that the records belong to an unrelated consumer, Manuel Hernandez ("Incarcerated Felon Hernandez").

53.    Had Defendant actually consulted or obtained the widely available public court records regarding the two felony and two misdemeanor convictions, it would have seen obvious discrepancies between Incarcerated Felon Hernandez and Plaintiff.

54.    The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Incarcerated Felon Hernandez include the following:

*Hernandez Pacheco v. One Source Technology, LLC d/b/a Asurint*
COMPLAINT

(a)    Plaintiff's legal name is "Manuel Adonis Hernandez Pacheco," and the criminal records belong to a "Manuel Hernandez" (no middle names or compound surnames) which is both clearly indicated in the widely available public records from Cook County, Illinois;

(b)    The public records of Cook County, Illinois, clearly show that Incarcerated Felon Hernandez was sentenced to prison for 6 years in connection with the felony receive/poss/sell stolen vehicle offense. Incarcerated people do not apply for employment for a truck driver position with Marten; and

(c)    The public records of Cook County, Illinois, include a mugshot of Incarcerated Felon Hernandez, which looks nothing like Plaintiff or Plaintiff's picture on his driver's license, which, upon information and belief, was provided to Defendant;

(d)    Plaintiff's driver's license number, which was provided to Defendant, is entirely different than the driver's license number of Incarcerated Felon Hernandez, which is clearly demonstrated in the public records of Cook County, Illinois;

(e)    Plaintiff has never resided in Illinois, nor has he ever been to Illinois, yet the public court records regarding the subject

criminal records indicate that Incarcerated Felon Hernandez resided in Hanover Park, Illinois, at the time he committed the offenses; and,

(f)     Plaintiff's Social Security number, which was provided to Defendant is different than that of Incarcerated Felon Hernandez.

55.    The sole reason the inaccurate criminal records were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's prospective employer.

56.    Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal convictions belong to an unrelated individual with a different middle name (or lack thereof), last name (different surname or no compound surname), physical attributes, driver's license number, and who even resides in a different part of the country from Plaintiff.

57.    In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Marten Notifies Plaintiff that his Job Offer May be Rescinded**

58.     On or about November 14, 2024, Plaintiff was notified by Marten that his job offer would be rescinded as a direct result, in whole or in part, of the misdemeanor and felony convictions reported by Defendant.

59.     Shortly thereafter, Plaintiff obtained a copy of the subject consumer report and was shocked and humiliated upon reviewing and realizing that the serious criminal convictions of another, namely Incarcerated Felon Hernandez, were published in the consumer report Defendant sold about Plaintiff to Marten.

60.     Plaintiff contacted Marten and informed them that he is not Incarcerated Felon Hernandez, that he has a different driver's license number than Incarcerated Felon Hernandez, and that he has a different name and social security number from that of Incarcerated Felon Hernandez. Plaintiff explained that the serious criminal convictions of Incarcerated Felon Hernandez do not belong to him, but Marten was dismissive and nonresponsive.

61.     Plaintiff reasonably believed that Marten was treating him like a criminal, which was reinforced by the fact that Marten would not even hear Plaintiff out when he was trying to explain that the Defendant must have made an error when preparing the subject background check report.

62.    Plaintiff was very panicked, confused, and concerned about the impact of Incarcerated Felon Hernandez's serious criminal convictions reported on the subject consumer report – specifically, the impact of the same on his future.

63.    Specifically, Defendant matched Plaintiff and Incarcerated Felon Hernandez and published the criminal records of Incarcerated Felon Hernandez onto the consumer report about Plaintiff and sold that report to Plaintiff's prospective employer.    This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's consumer report to Marten, but Defendant failed to perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant's Consumer Report**

64.    On November 18, 2024, desperate to secure employment with Marten, and riddled with worry over the far-reaching impacts of being confused with a convicted felon, Plaintiff disputed the inaccurate information with Defendant. Plaintiff disputed via telephone with Defendant.

65.    Plaintiff identified himself and provided information to Defendant to support his dispute.

66.    Plaintiff specifically disputed the criminal records of Incarcerated Felon Hernandez.

67.    Plaintiff specifically stated that the criminal records of Incarcerated Felon Hernandez do not belong to Plaintiff.

68.     Plaintiff specifically asked Defendant to investigate and delete Incarcerated Felon Hernandez's criminal records from any consumer report about Plaintiff.

69.     On November 20, 2024, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute and removed the criminal records from the subject consumer report.

70.     Defendant also communicated to Plaintiff that it had issued a corrected consumer report to Marten.

### Plaintiff's Damages

71.     On or about November 21, 2024, Marten contacted Plaintiff to offer him the truck driver position. Marten informed Plaintiff that the prospective started date would be November 25, 2024. Because of the delay, Plaintiff would have already lost out on a week of work.

72.     Due to the emotional unease that Plaintiff felt after the initial adverse action notice, he rejected the second job offer from Marten. Plaintiff reasonably believes that people at the company would already know about the stigmatizing criminal records that were initially reported on his background check, which caused him anxiety and fear of rejection.

73.     Plaintiff reasonably believes Defendant's false report tarnished Plaintiff's reputation with Marten, or at least with Marten's staff and employee, which ultimately cost Plaintiff a promising, well-paying job with Marten.

74.     Moreover, the position with Marten was full-time and Plaintiff was set to earn approximately $1,260.00 per week with a competitive benefits package. More importantly, Plaintiff was excited to work as a truck driver with Marten because he was qualified to successfully perform the work and was passionate about the field.

75.     Due to Defendant's unreasonable procedures in the first place and despite Plaintiff's continued efforts to seek employment, Plaintiff is currently unemployed. Plaintiff is married and his wife is dependent on his support. Plaintiff has been using his savings to cover his living expenses, but has been struggling to pay bills. Plaintiff's lack of employment and difficulty paying his bills has put a strain on his relation with his wife.

76.     Furthermore, Plaintiff and his wife have been bouncing around between Airbnb rentals, and the lack of financial security has put significant stress on Plaintiff as he now worries that he might have to live out of his truck.

77.     The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address.

*Hernandez Pacheco v. One Source Technology, LLC d/b/a Asurint*
COMPLAINT

Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

78.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

### CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

79.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

80.    Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

81.    At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

82.    At all times pertinent hereto, the above-mentioned consumer report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

83.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

84.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

85.    Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

*Hernandez Pacheco v. One Source Technology, LLC d/b/a Asurint*
COMPLAINT

86.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendant negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: December 3, 2024,          **CONSUMER ATTORNEYS**
                                  */s/ David Pinkhasov*
                                  David Pinkhasov, FL# 1040933
                                  CONSUMER ATTORNEYS
                                  72-47 139th Street
                                  Flushing, NY 11367
                                  T: (718) 701-4605

F: (718) 715-1750
E: dpinkhasov@consumerattorneys.com

*Attorneys for Plaintiff*
*Manuel Adonis Hernandez Pacheco*